**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Roxane D., | Case No. 21-cv-2656 (JRT/DTS) |
| Claimant, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi,<br>*Acting Commissioner of Social Security,* | |
| Defendant. | |

Claimant Roxane D. appeals the Commissioner of Social Security's denial of disability benefits. She contends the ALJ failed to properly evaluate and account for the medical opinions of a Consultative Examiner, Dr. Trulsen. For the reasons stated below, the Court recommends the Commissioner's decision be affirmed.

**I.     ALJ DECISION**

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued his decision in this matter on January 27, 2021. In steps one through three, he found Claimant had not engaged in substantial gainful activity since the alleged disability onset date (June 1, 2018), and has several severe impairments: connective tissue disease, not otherwise specified; degenerative disc disease of the

cervical and lumbar spine; fibromyalgia; migraine headaches; and mild neurocognitive disorder. R. 19.[1] The ALJ determined these impairments, whether considered singly or in combination, did not meet or medically equal any listed impairment contained in 20 C.F.R., Part 404, Subpart P, Appendix 1, including 1.02, 11.02, 12.02, 12.04, 14.06, or Social Security Ruling 12-2p. R. 21 – 24.

The ALJ determined that Claimant had the residual functional capacity ("RFC") "to perform medium work as defined in 20 CFR 404.1567(c)," subject to the following conditions:

- Occasionally lift, carry, push, or pull 50 pounds
- Frequently lift, carry, push, or pull 20 pounds
- Can sit 6 hours out of an 8-hour workday
- Can stand or walk a combined 6 hours out of 8-hour workday
- Can perform frequent reaching, handling, fingering, feeling, pushing, and pulling
- Can frequently operate foot controls
- May occasionally climb ramps and stairs but never ladders, ropes, or scaffolds
- May perform occasional balancing, stooping, kneeling, crouching, and crawling
- May have frequent exposure to humidity, wetness, extreme heat, pulmonary irritants (such as dust, odors, fumes) and vibrations
- May frequently operate a motor vehicle
- Must avoid exposure to extreme cold and hazards such as unprotected heights and moving mechanical parts
- May not work in environments that are loud or very loud as defined in the SCO, but may work in environments of a moderate noise level or quieter
- Can perform detailed tasks consistent with GED reasoning level 3
- Can work in an environment with routine, predictable changes.

R. 25.

As a result, the ALJ found Claimant was not capable of performing any past relevant work. R. 33-34. Given Claimant's RFC, the ALJ found that Claimant was capable of performing other work in the national economy, including working as a laminating machine feeder, foot worker, or machine grinder, and therefore was not disabled. R. 34.

---

[1] "R." refers to the Administrative Record, Docket. No. 14.

**II.   STANDARD OF REVIEW**

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* § 405(g) (sentence four).

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under Social Security regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in previous work but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a)(1); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). At step five the "burden of production shifts to the Commissioner to produce evidence of jobs available in the national economy that can be performed by a person with the claimant's RFC and vocational skills," but the "ultimate burden of persuasion to prove disability…remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (internal citation omitted).

The Court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole and is not based on legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is "less than a

preponderance but enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quotation and alteration omitted). The Court "must consider evidence that supports and detracts from the ALJ's decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quotation omitted). The Court should reverse the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's findings are not among the possible positions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

Reversal of an ALJ's decision is not required if an error was harmless, meaning "[t]here is no indication that the ALJ would have decided differently" if the error had not occurred. *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (internal quotations omitted). Claimant generally bears the burden of showing that any alleged error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. ANALYSIS

Claimant contends the ALJ improperly evaluated the opinion of Consultative Examiner, Dr. Trulsen. Dkt. No. 16. Specifically, Claimant argues the ALJ erred by rejecting Dr. Trulsen's opinion that Claimant had a limited ability to handle stress and by omitting social functioning limitations found by Dr. Trulsen. *Id.* at 6. Claimant asserts these failures constitute reversible error. *Id.*

4

The ALJ does not defer or give any specific evidentiary weight, including controlling weight, to medical opinions or prior administrative medical findings, including those from a claimant's treating physicians or providers. 20 C.F.R. § 404.1520c(a). Rather, all medical opinions and prior administrative medical findings start on an equal footing, and the ALJ evaluates their persuasiveness by considering the factors outlined in the regulations. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2). An opinion's "supportability" is the extent to which the source offering the opinion provides objective medical evidence and explanations supporting the opinion. 20 C.F.R. § 404.1520c(c)(1). Its "consistency" is the extent to which the opinion is consistent with the other record evidence from both medical and non-medical sources. 20 C.F.R. § 404.1520c(c)(2).

### A. Impaired Stress Tolerance

Claimant asserts the ALJ erred by finding unpersuasive Dr. Trulsen's opinion that Claimant had an impaired tolerance for the "stress and pressures" of an entry-level workplace. Dkt. No. 16 at 9-10. With respect to Dr. Trulsen's opinion, the ALJ stated, in pertinent part:

> Dr. Trulsen opined the claimant's general mental capacity for carrying out work like tasks with reasonable persistence or pace appeared to demonstrate a slight-to-occasionally moderate level of impairment; with her general mental capacity for responding appropriately to brief and superficial contact with coworkers and supervisor appearing to demonstrate occasions of slight impairment due to interference with current cognitive and mental health difficulties. Dr. Trulsen opined the claimant's general mental capacity for tolerating stress and pressures typically found in an entry-level workplace appeared to demonstrate a slight-to-occasionally moderate level of impairment due to interference with current mental health difficulties. I found Dr. Trulsen's opinion generally persuasive because it was consistent with the claimant's generally normal presentation at the exam and treatment notes. However, I found the opinion about slight-to-occasionally moderate level of impairment of tolerating stress and pressures typically found in

5

entry-level workplace was not persuasive because the types of stress was not described.

R. 33 (internal citations omitted).

Claimant argues the ALJ's evaluation of the opinion[2] was inadequate because the ALJ did not consider either the supportability or consistency factors before disregarding it for lack of specificity. *Id.* To begin, though the ALJ did not use the word supportability, his decision to disregard the opinion for vagueness necessarily evaluates supportability, as it finds the opinion to be unsupported by adequate explanation. In addition, when an opinion is vague or broad it may be impossible for the ALJ to address its supportability or consistency in any detail beyond finding it "too vague to be persuasive." *Arden B. v. Kijakazi*, 2022 WL 4636221 at *5 ("ALJ found opinion too vague to be persuasive. Claimant argues that the ALJ failed to address supportability and consistency. But it is precisely because [the opinion is vague] that the ALJ could not address it in any more detail.") Thus, an ALJ may consider the vagueness of a medical opinion in assessing its persuasiveness and may reject it on that ground. *Id.*; *see also Owens v. Berryhill*, 2018 WL 2102400 at *7; *Cf. Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) ("A treating

---

[2] The Commissioner argues that Dr. Trulsen's opinion on Claimant's impaired stress tolerance does not meet the definition of a "medical opinion," asserting it fails to evaluate what Claimant can still do despite the impairment or impose impairment-related limitations. The Commissioner cites no caselaw supporting this argument. The relevant statute, 20 C.F.R. § 404.1513(2)(ii), defines a medical opinion as including a statement from a medical source regarding Claimant "responding appropriately to supervision, co-workers, or work pressures in a work setting." Thus, while the opinion is vague and nonspecific, Dr. Trulsen asserting Claimant's "general mental capacity for tolerating stress and pressures typically found in an entry-level workplace appears to demonstrate a slight to occasionally moderate level of impairment" appears to fit under the statute's definition of a medical opinion, as a statement evaluating impairment in responding to work pressures. *See* 20 C.F.R. § 404.1513(2)(ii).

6

physician's opinion deserves no greater respect than any other . . . when [it] consists of nothing more than vague, conclusory statements.").

Moreover, even assuming the ALJ's evaluation of Dr. Trulsen's stress tolerance opinion was deficient, Claimant has not met her burden to show the alleged error was harmful. To meet this burden, Claimant must show some indication that the ALJ would have made a different decision absent the alleged error, or otherwise identify how the alleged error impacted the ALJ's findings and conclusions with respect to her RFC. *See Tyler M. J. v. Berryhill*, 2019 WL 720210 at *10 (D. Minn. Jan. 24, 2019) (citing *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir 2012). The burden to show harm appears particularly difficult to surmount here, because the ALJ in fact did account for claimant's stress tolerance in his RFC. Specifically, the ALJ stated, "I imposed the work restrictions of detailed tasks consistent with GED reasoning level 3 and work in an environment with routine, predictable changes due to her complaints of difficulties with concentration, focus, and *stress tolerance*." R. 31 (emphasis added).

Claimant does not specify how the alleged failure to more fully credit Dr. Trulsen's opinion would have led the ALJ to make a different decision or specify how the error impacted the ALJ's findings or conclusions. Rather, Claimant merely argues "[d]ue to the ALJ's own mistakes, the residual functional capacity cannot be definitively found to be an accurate representation of Ms. Dawn's maximum remaining ability to perform work activities," but does not indicate *how* the RFC is resultingly inaccurate, or how a modified RFC would have let to a finding of disability. Dkt. No. 21 at 4-5. Therefore, Claimant has failed to meet her burden of establishing this alleged error was harmful.

### B. Social Functioning Limitation

Claimant also contends the ALJ erred by failing to account in the RFC for Dr. Trulsen's opinion that Claimant has a social functioning limitation, without stating this finding was unpersuasive. Notably, Dr. Trulsen did not opine that Claimant required a specific social functioning limitation or specify that Claimant required work that minimized her contact with the public. Dr. Trulsen did not assert that Claimant was incapable of having more than brief or superficial contact with colleagues or supervisors, either—the question of Claimant's capacity for more in-depth contact was left entirely unaddressed. Instead, Dr. Trulsen stated "her general mental capacity for responding appropriately to brief and superficial contact with coworkers and supervisor[s] appear[ed] to demonstrate occasions of slight impairment due to interference with current cognitive and mental health difficulties." R. 465. Dr. Trulsen's other observations of Claimant's social functioning were generally positive, noting that Claimant:

> cooperated throughout the assessment process and appeared to do her best when answering questions. Her frustration tolerance appeared developed at expected levels. She appeared alert and oriented . . . made appropriate eye contact and appeared in a pleasant mood. She demonstrated an average range of affect for topics discussed. Her perceptions appeared appropriate. Her judgment and insight appeared developed at generally acceptable levels. . . . Stream of consciousness appeared appropriate for topics discussed.

R. 463-64.

The record demonstrates the ALJ considered Dr. Trulsen's opinion on Claimant's social functioning, as well as other relevant evidence in the record. At step three, the ALJ noted:

> In interacting with others, the claimant had a mild limitation. The claimant reported an adequate level of social life and social acquaintance. The

8

> consultative psychological examiner noted she made appropriate eye contact, appeared in a pleasant mood, and interacted in a somewhat dramatic style especially when discussing her physical/medical/pain issues.

R. 23 (internal citations omitted). Further, while explaining the RFC determination at step four, the ALJ noted Dr. Trulsen's finding that Claimant's "general mental capacity for responding appropriately to brief and superficial contact with coworkers and supervisor[s]…demonstrate[d] occasions of slight impairment due to interference with current cognitive and mental health difficulties." R. 33. The ALJ's discussion of Claimant's social functioning indicates it was properly considered, even if a social functioning limitation was not expressly included in the RFC. *See Tyler M. J. v. Berryhill*, 1029 WL 720210 at *11 (holding discussion of relevant evidence in the record demonstrated non-severe impairments were considered, even if they were not expressly addressed in the ALJ's decision).

The ALJ stated he found "Dr. Trulsen's opinion generally persuasive because it was consistent with the claimant's generally normal presentation at the exam and treatment notes." R. 33. Thus, the ALJ appears to have considered a "slight impairment" of social functioning to be consistent with "generally normal presentation." Claimant has not directly challenged the ALJ's determination that she had "generally normal presentation" in social functioning and the Court notes there is substantial evidence in the record to support this determination. Claimant indicated she spent time with others in person, at church, on the phone, when friends came over to visit, and when she taught weekly bible study, and had no trouble getting along with family, friends, neighbors, or authority figures. R. 278-80. Further, Claimant did not allege social functioning difficulties during her hearing testimony, instead focusing on physical ailments. R. 55-63. Additionally, agency reviewers Maria Yapondjian-Alvarado, Psy.D., and Ray M. Conroe,

9

Ph.D. L.P., both evaluated Claimant's records, including Dr. Trulsen's opinion, and both determined Claimant did not have social interaction limitations. R. 82, 100.

Given that the ALJ appears to have considered Dr. Trulsen's opinion of a slight social impairment consistent with Claimant's generally normal presentation, the Court must affirm, *see Cuthrell*, 702 F.3d at 1116 (holding if the record supports two inconsistent positions and one reflects the ALJ's decision, the court must affirm the decision); *see also Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019) (holding deficient explanation of an ALJ's decision, alone, is insufficient to set aside a decision supported by substantial evidence), but will nonetheless conduct the harmless error analysis.

The Commissioner argues Claimant could not establish the alleged error was harmful because all three occupations suggested by the vocational expert as suitable for Claimant's RFC are "unskilled," and therefore involve working with things, rather than people. Dkt. No. 20 at 10-11. The Commissioner cites the *Dictionary of Occupational Titles* (*DOT*) definitions for all three suggested vocations: laminating-machine feeder, foot worker, and machine grinder. *Id.* In ranking the degree of interaction with people each occupation involves, all three are defined as having "not significant" interaction with other people, whether the interaction involved taking instructions or helping other people. *Id.*; *DOT* 569.686-042, 1991 WL 683892; *DOT* 934.687-010, 1991 WL 688259; *DOT* 652.686-014, 1991 WL 685770. At least one court has construed jobs identified as "not significant" in the category of "people" as "consistent with limitations to occasional, brief, and superficial contact with coworkers and supervisors." *Travis C. v. Kijakazi*, 2023 WL 119396, at *1 (D. Me. Jan. 6, 2023), *report and recommendation adopted*, 2023 WL 372063 (D. Me. Jan. 24, 2023).

10

Claimant argues the ALJ's alleged failure to account for Dr. Trulsen's opinion on social functioning rendered the RFC inaccurate, constituting reversible error. Dkt. No. 21 at 4. It is Claimant's burden to prove the RFC. *Schake v. Berryhill*, 2018 WL 4469250, at *10 (D. Minn. Sept. 18, 2018) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). However, Claimant does not specify how the RFC does not accurately reflect what she can do despite her limitations, or how inclusion of a social functioning limitation in the RFC would have resulted in a different determination by the ALJ. *Tyler M. J. v. Berryhill*, 2019 WL 720120 at * 10 (holding Claimant failed to show the alleged error was harmful because he did not show his RFC was inaccurate or assert how the alleged error impacted the ALJ's findings and conclusions or the final determination). This is insufficient to meet her burden to both prove the RFC is inaccurate and that the alleged error was harmful.

## IV.  RECOMMENDATION

Based on the foregoing and all the files, records and submissions, the Court RECOMMENDS THAT:

1. Claimant's Motion for Summary Judgment [Dkt. No. 15] be **DENIED**.

2. The Commissioner's Motion for Summary Judgment [Dkt. No. 19] be **GRANTED**.

Dated: February 13, 2023         ___s/David T. Schultz_____
                                 DAVID T. SCHULTZ
                                 U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).