UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ROXANE DAWN,

                                           Civil No. 21-2656 (JRT/DTS)

              Plaintiff,

v.                                  **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,

              Defendant.

---

Clifford Michael Farrell, **MANRING & FARRELL**, P.O. Box 15037, 167 North High Street, Columbus, OH 43215; Edward C. Olson, **REITAN LAW OFFICE**, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402, for plaintiff.

James D. Sides and Michael Moss, **SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL,** Office of Programming Litigation, Office 4, 6401 Security Boulevard, Baltimore, MD 21235; Ana H. Voss, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for defendant.

Plaintiff Roxane Dawn brought this action against the Acting Commissioner of the Social Security Administration, Kilolo Kijakazi, ("Commissioner") requesting review of an administrative law judge's ("ALJ") denial of Dawn's application for disability insurance benefits. Upon cross motions for summary judgment, Magistrate Judge David Schultz filed a report and recommendation ("R&R") recommending the Court deny Dawn's motion and granting the Commissioner's motion, thereby upholding the ALJ's denial. Dawn objected to the R&R, arguing that the ALJ's findings failed to properly evaluate the

medical opinion evidence and failed to properly account for her social functioning limitations in determining her residual functional capacity. Each of the arguments made in the Objection was considered and addressed by the Magistrate Judge in the R&R. After a de novo review of the record, the Court will overrule Dawn's objections, adopt the R&R, deny Dawn's motion, and grant the Commissioner's motion for summary judgment because the ALJ's decision is supported by substantial evidence from the record as a whole.

## BACKGROUND

On May 21, 2018, Dawn reported to the emergency department at St. Luke's Emergency Department with complaints of left lower quadrant pain that had begun roughly three days prior and had been worsening. (Soc. Sec. Admin. Record ("AR") at 415, Feb. 16, 2022, Docket No. 14.)[1] The assessment noted that the etiology of her pain was unclear, and that her labs were normal. (*Id.* at 418.) The primary clinical impression was abdominal pain, but her condition was noted as stable and she was directed to follow up in one to two weeks if her pain was not improving. (*Id.*) The record does not indicate she returned or followed up within that timeframe.

On September 19, 2018, Dawn presented to the Duluth Family Medicine Department with chronic fatigue and pain, as well as other health concerns like sinus

---

[1] The Administrative Record citations here refer to the consecutive pagination bolded at the bottom of the documents, rather than the pagination for each individual document within the record.

problems. (AR at 398.) Her assessment noted a disorder of right eustachian tube, that she was instructed to continue treating with Flonase and saline nasal rinses. (*Id.* at 400.) No cause was found for her symptoms, but she was directed to report back if no improvement or if her condition worsened. (*Id.*) There is again no record evidence that she consequently followed up on these issues.

In November 2018, Dawn reported to St. Luke's for a physical therapy ("PT") evaluation and indicated that she was experiencing lower back pain with radiculopathy, commonly referred to as a pinched nerve, that was worsening and that she was also experiencing hip pain. (AR at 406.) Dawn described pain throughout her body and tightness in most joints. (*Id.* at 407.) The observation noted a slight decreased lumbar lordosis and mild slouched posture, but no significant gait deficits. (*Id.* at 406.) Her assessment was that she presented "weakness, decreased [range of movement] ROM, and impaired activity tolerance," and that she would "benefit from PT with focus on exercise for strengthening, core stabilization, ROM/stretching, and overall conditioning." (*Id.* at 407.) There is no record evidence that Dawn started PT following this appointment.

On January 22, 2019, Dawn applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of June 1, 2018. (AR at 174.) Dr. Marlin Trulsen, a licensed psychologist, was contracted by the Disability Determination Services in cooperation with the Social Security Administration to examine Dawn on July 9, 2019. (*Id.* at 466.) Dawn reported completing an Associate of Arts degree and

employment for 40 years. (*Id.* at 462.) Most recently, she held a store manager position for 10 years until she was terminated for not completing her employment responsibilities in February 2019. (*Id.* at 462.) She reported concentration difficulties that developed over time and noted a history of multiple "head injuries." (*Id.*) She also indicated that she struggled to maintain focus in longer conversations and occasionally felt "disoriented" to her location, and noted that these experiences occurred approximately every other week. (*Id.*) She noted she was able to take care of her mother, attend to household needs, and shop independently, but did note some limitations due to her physical, medical, and pain issues, such as shoveling snow. (*Id.* at 463.)

Based on Dawn's history, Dr. Trulsen diagnosed her with (1) an unspecified mild neurocognitive disorder without behavioral disturbance and (2) other specified anxiety disorder with panic disorder features. (*Id.* at 465.) Her general mental capacity for understanding was noted as showing no general impairment. (*Id.*) Her general mental capacity for remembering and following instructions demonstrated a slight impairment. (*Id.*) Similarly, her mental capacity for sustaining attention and concentrating demonstrated a slight level of impairment due to interference with current cognitive and mental health difficulties. (*Id.*) Her general mental capacity for carrying out work-like tasks with reasonable persistence and pace demonstrated a slight to occasionally moderate level of impairment, with her mental capacity for responding appropriately to brief and superficial contact with coworkers and supervisors demonstrating occasions of

slight impairment due to interference with current cognitive and mental health difficulties. (*Id.*) Dr. Trulsen also opined that Dawn would have moderate levels of difficulty tolerating stress and pressures typically found in an entry-level workplace. (*Id.*) Dawn appeared capable of respecting authority with no impairment, her gait and station appeared average with no difficulties sitting, standing, or walking, and she demonstrated an average ability to hear and produce normal conversation and sustained speech. (*Id.*)

On July 30, 2019, Dawn was also examined by Dr. A. Neil Johnson, M.D., at the request of the Disability Determination Service for Social Security claims. (*Id.* at 468.) A physical examination revealed that Dawn could hear conversational speech without limitation, her speech was clear, she could walk normally across the room without an assistive device but had mild to moderate difficulty tandem walking and mild difficulty squatting with a slight crepitus of her knees. (*Id.* at 469.) Her neck was the "only joint area that had a loss of motion" and demonstrated considerable stiffness. (*Id.*) Dr. Johnson concluded that:

> The patient does report chronic pain for many years. She was formally diagnosed with fibromyalgia in 2017. She probably best fits fibromyalgia. She was treated for Lyme's at one point. She does have considerable stiffness of her neck. There may be some mild osteoarthritis. There is no evidence of radiculopathy. There is no evidence of inflammatory arthritis such as rheumatoid arthritis. Pinch and grips are reasonable although said to be slightly down. She states that she could create a 75-pound force in her grip testing previously. With all of this she has chronic pain and chronic fatigue and has a lot of trouble sleeping. There are days where she doesn't want to get out of bed. She also reports a history of Raynaud. At one

>point she states that she had vestibular abnormality in the right ear and reports decreased hearing in the right ear although throughout this examination she had no trouble hearing. She had mild difficulty with tandem walking. She does not use an assistive device.

(*Id.* at 472.)

Dawn's application was denied on initial review and on reconsideration and, at Dawn's request, an ALJ held a hearing on her application on August 7, 2020. (AR at 47–70, 105–108, 113–116.) After the hearing, the ALJ issued a written opinion on January 27, 2021, denying Dawn's disability application after finding that Dawn was not disabled. (*Id.* at 35.) The ALJ found that Dawn had the following severe impairments: connective tissue disease, not otherwise specified; degenerative disc disease of the cervical and lumbar spine; fibromyalgia; migraine headaches; and mild neurocognitive disorder. (*Id.* at 19.) The ALJ determined these impairments were not an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21.) *See also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

After analyzing Dawn's symptom reports, medical opinions, and other evidence, the ALJ then found that Dawn had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) subject to the following:

- Occasionally lift, carry, push, or pull 50 pounds;
- Frequently lift, carry, push, or pull 20 pounds;
- Can sit 6 total hours out of an 8-hour workday;
- Can stand or walk a combined 6 hours out of an 8-hour workday;

- Can perform frequent reaching, handling, fingering, feeling, pushing, and pulling;
- Can frequently operate foot controls;
- May occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds;
- May perform occasional balancing, stooping, kneeling, crouching, and crawling;
- May have frequent exposure to humidity, wetness, extreme heat, vibrations, and pulmonary irritants such as dust, odors, and fumes;
- May frequently operate a motor vehicle;
- Must avoid exposure to extreme cold and hazards such as unprotected heights and moving mechanical parts;
- May not work in environments that are loud or very loud as designed in the SCO, but may work in environments of a moderate noise level or quieter;;
- Can perform detailed tasks consistent with GED reasoning level 3; and
- Can work in an environment with routine, predictable changes.

(AR at 24–25.)

Relying in part on testimony from the vocational expert, the ALJ determined that, although Dawn could not perform her past job as a retail store manager, "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" based on her age, education, work experience, and RFC. (*Id.* at 34–35.) Specifically, the VE testified that some jobs—including "laminating machine feeder," "foot worker," and "machine grinder"—existed for a person with the limitations the ALJ found her to have. (*Id.* at 34.) The ALJ found the VE's testimony consistent with the Dictionary of Occupational Titles. (*Id.*) Therefore, the ALJ found Dawn was not

considered disabled under the Social Security Act. (*Id.* at 35.) The Appeals Council denied her request for review, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–6.)

Dawn then brought this action, seeking the Court's review of the ALJ's decision. (Compl., Dec. 13, 2021, Docket No. 1.) Dawn and the Commissioner filed cross motions for summary judgment. (Pl.'s Mot. Summ. J., Apr. 18, 2022, Docket No. 15; Def.'s Mot. Summ. J., May 18, 2022, Docket No. 19.) The Magistrate Judge issued an R&R recommending the Court deny Dawn's motion and grant the Commissioner's motion. (R. & R., Feb. 13, 2023, Docket No. 24.) The Magistrate Judge found substantial evidence in the record supporting the ALJ's conclusion that Dawn was not disabled within the meaning of the Social Security Act because the ALJ properly evaluated the relevant medical opinions and Dawn failed to show that any alleged error was harmful. (*Id.* at 3–11.) Dawn timely objected to the R&R, asserting the ALJ made two errors: (1) the ALJ failed to properly evaluate Dr. Trulsen's medical opinion that Dawn had extensive limitations concerning her mental health impairments; and (2) the ALJ erred by failing to properly account for the social functioning limitations opined by Dr. Trulsen in the determination of Dawn's RFC. (Pl.'s Obj. to R. & R., Feb. 27, 2023, Docket No. 26.)

## DISCUSSION

### I. STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn.

LR 72.2(b)(1).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews de novo "properly objected to" portions of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).  Unobjected portions of the R&R are also only reviewed for clear error.  Fed. R. Civ. P. 72 advisory committee's note, subd. (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Because Dawn's and the Commissioner's motions for summary judgment are dispositive, the Court reviews Dawn's objections de novo and unobjected-to portions of the R&R for clear error.  *See* D. Minn. LR 7.1(c)(6).

**II.   ANALYSIS**

Dawn objects to the R&R, arguing that the ALJ (1) failed to properly and fully evaluate Dr. Trulsen's opinions, which make it impossible to assess her maximum capacity given her limitations and (2) failed to properly account for Dr. Trulsen's opinion regarding Dawn's social functioning limitations in the RFC.

When reviewing a denial of benefits, a court is limited to reviewing whether the decision complied with the law and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). A court must uphold a denial of benefits based on factual findings if the denial "is supported by substantial evidence on the record as a whole." *Rappoport v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotation marks omitted).

Still, this requires considering both evidence that supports and detracts from the ALJ's decision. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence, however, may be less than a preponderance of the evidence and a court may not reverse the ALJ's decision "even if substantial evidence would have supported a contrary decision or even if [it] would have decided the case differently." *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022). In other words, if one can reasonably draw two inconsistent conclusions, both of which are supported by the evidence, and one supports the ALJ's findings, the Court must affirm the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

When evaluating whether substantial evidence supports the conclusion, the Court, however, may only consider the rationale the ALJ gave for the decision. *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) ("A reviewing court may not uphold an agency decision based on reasons not articulated by the agency, when the agency has failed to make a necessary determination of fact or policy upon which the court's alternative basis is premised." (cleaned up)); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943). Thus, even if there is evidence in the record for an alternative rationale that would support the outcome reached by the ALJ, a reviewing court may not search the record for this evidence. *See Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990). Still, standing alone, an ALJ's failure to adequately explain the rationale or factual finding or to address specific facts in the record does not require a reviewing court to remand if the record as a whole provides substantial evidence for the decision. *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

A. **Administrative Law Judge's Assessment of Dr. Trulsen's Medical Opinion**

Dawn first argued to the Magistrate Judge that the ALJ failed to properly evaluate Dr. Trulsen's opinion that Dawn's "general mental capacity for tolerating stress and pressures typically found in an entry-level workplace appeared to demonstrate a slight-to-occasionally moderate level of impairment" when the ALJ rejected the opinion as unpersuasive. (R. & R. at 5.) The Magistrate Judge found that, contrary to Dawn's assertions, the opinion on stress tolerance was vague and nonspecific, and the ALJ properly considered the supportability and consistency factors before disregarding the

-11-

opinion for lack of specificity. (*Id.* at 5–6.) In her Objection, Dawn rejects that Dr. Trulsen's opinion was too vague because "entry-level" has a clear definition and consistent use within the Social Security process. (Pl.'s Obj. at 3–4.)

A claimant's "RFC is a medical question, and an ALJ's findings must be supported by some medical evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Medical opinions and prior administrative medical findings are not automatically given deference or controlling weight. 20 C.F.R. § 404.1520c(a). Instead, the persuasiveness of medical opinions is evaluated using five factors: (1) supportability, (2) consistency with the evidence, (3) relationship of the medical provider to the claimant, (4) specialization of the provider, and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency, which the regulations require the ALJ to explicitly address. 20 C.F.R. § 404.1520c(b)(2). The Court agrees with the Magistrate Judge that the ALJ properly considered the supportability and consistency factors, even though the ALJ did not directly name the factors.

First, the ALJ adequately explained this rejection, determining that Dr. Trulsen's opinion about "slight-to-occasionally moderate level of impairment of tolerating stress and pressures typically found in entry-level workplace was not persuasive because the types of stress was [sic] not described." (AR at 33.) In this way, while the ALJ could have been more direct, he evaluated the supportability of the opinion by assessing whether or not it was adequately explained, which the ALJ determined it was not. Moreover, as the

Magistrate Judge notes, an ALJ may consider the vagueness of a medical opinion in assessing its persuasiveness and may reject it on that ground. (R. & R. at 6.) *See Arden B. v. Kijakazi*, No. 21-2008, 2022 WL 4636221, at *5 (N.D. Iowa Sept. 30, 2022) (finding an ALJ did not err in failing to detail supportability and consistency because the doctor's statement was "so broad that the ALJ could not address it in any more detail"). The Eighth Circuit has recognized that medical opinions containing "no specifics concerning [the claimant's] condition.... [are] of limited value due to [their] vagueness." *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996). According to the ALJ, it is unclear what stress and pressures Dawn would be impaired in tolerating because Dr. Trulsen's opinion did not describe them, and thus was not supported by adequate explanation. Therefore, the ALJ was within his authority to find Dr. Trulsen's opinion unpersuasive.

Second, the ALJ showed why this part of Dr. Trulsen's opinion was lacking in consistency and such rejection is supported by substantial evidence. For example, Dr. Trulsen's opinion is inconsistent with the record pertaining to Dawn's active daily routine. Dawn taught Bible study classes twice a week and reported an adequate level of social life and functioning during the relevant period. (AR at 463.) Additionally, when Dawn filed her disability claim, she did not include any mental impairment when describing her limited her ability to work. (*Id.* at 252.) Further, while her functional reports indicated that she tried to avoid stress, she acknowledged that she was able to handle changes in routine "okay" and "adjust and adapt as necessary." (*Id.* at 280, 299.) During her hearing

before the ALJ, Dawn described the symptoms and limitations resulting from her physical impairments but did not describe symptoms or limitations affecting her ability to handle stress (*Id.* at 56–63.)

Lastly, after reviewing Dr. Trulsen's report and the other record evidence on reconsideration, both agency psychologists concluded that Dawn could perform detailed tasks on a sustained basis in a work setting with occasional workplace changes, which was ultimately consistent with the ALJ's RFC. (*Id.* at 24–25, 82, 100.)

Moreover, to be clear that the ALJ's finding of no disability would be the same even if he found Dr. Trulsen's opinion persuasive, the ALJ still accounted for Dawn's stress tolerance. In the RFC, the ALJ "imposed the work restrictions of detailed tasks consistent with GED reasoning level 3 and work in an environment with routine, predictable changes due to her complaints of difficulties with concentration, focus, and **stress tolerance**." (AR at 31 (emphasis added).) Thus, while the ALJ found this part of Dr. Trulsen's opinion unpersuasive, he still provided a more favorable categorization by imposing work restrictions with Dawn's stress tolerance in mind. Nevertheless, the ALJ concluded that she was not disabled during the relevant period. The ALJ's explanation for finding this part of Dr. Trulsen's medical opinion unpersuasive is brief but is adequate and is consistent with substantial record evidence. Because substantial evidence supports the ALJ's findings, the Court may not reverse it.

B.  **Administrative Law Judge's Questioning of the Vocational Expert**

Dawn next argued to the Magistrate Judge that the ALJ failed to properly account for the social functioning limitations opined by Dr. Trulsen in the RFC, despite finding the opinions generally persuasive. (R. & R. at 8.) The Magistrate Judge found that Dr. Trulsen did not opine that Dawn required a specific social functioning limitation or specify that Dawn required work that minimized her contact with the public. (*Id.*) To the contrary, the question of Dawn's capacity for more in-depth contact was left unaddressed, while Dr. Trulsen's other observations of Dawn's social functioning were generally positive. (*Id.* at 8–9.) The Magistrate Judge concluded that the ALJ properly considered Dawn's social functioning as well as other relevant evidence in the record, "even if a social functioning limitation was not expressly included in the RFC." (*Id.* at 9.)

Dawn objects to this finding, arguing that the ALJ's decision contains an internal inconsistency because he found Dr. Trulsen's opinion—which expressed social functioning limitations—and the opinions of the agency psychologists—which expressed no social functioning limitations on reconsideration—both persuasive. (Pl.'s Obj. at 6.) As such, Dawn argues that it "is impossible for a subsequent reader to trace the path of the ALJ's reasoning in this case because he found directly contradictory opinions to be persuasive." (*Id.*)

A disability claimant's RFC is the most the claimant is capable of doing, as determined by considering the combined limiting effects of all severe and non-severe impairments. 20 C.F.R. §§ 404.1545(a), (e). An impairment "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). An RFC must be "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1).

The Court is not convinced that Dr. Trulsen's opinion and that of the agency medical consultants are "directly contradictory." As the Magistrate Judge notes, Dr. Trulsen opined that "her general mental capacity for responding appropriately to brief and superficial contact with coworkers and supervisor[s] appear[ed] to demonstrate occasions of slight impairment due to interference with current cognitive and mental health difficulties." (R. & R. at 5.) This language does not mention any specific social functioning limitation or require work that minimizes Dawn's contact with the public. Because Dr. Trulsen did not opine that specific social limitations were required, it does not contradict the agency medical consultants' opinions that Dawn could "tolerate occasional workplace changes" and that Dawn's "ability to respond appropriately to changes in the workplace would be reduced." (AR at 82, 100.) In fact, Dr. Trulsen's opinion that Dawn demonstrated "**slight occasions** of impairment" with social functions could be said to align with the opinions that Dawn could "tolerate **occasional** workplace changes." (AR at 82, 465 (emphasis added).)

Further, the ALJ specifically noted that while he found the state agency medical consultants' opinions generally persuasive, he deferred to those opinions which induced

more restrictive limitations, such as the impartial board-certified medical expert Dr. Goldstein, who "had the opportunity to access the entire medical file and consider the claimant's headache disorder, which require [sic] more limitations."  (AR at 32.)  Thus, given that such opinions are not directly contradictory and the ALJ deferred to those opining more restrictions, it is clear that that the ALJ considered Dr. Trulsen's opinion on Plaintiff's social functioning.  The ALJ noted that in "interacting with others, the claimant had a mild limitation" and that Plaintiff "reported an adequate level of social life and social acquaintance."  (AR at 23.)

The Court is satisfied that the ALJ adequately considered Plaintiff's social functioning, even if not expressly included in the RFC.  *Tyler M. J. v. Berryhill*, No. 18-537, 2019 WL 720210, at *11 (D. Minn. Jan. 24, 2019), *adopted sub nom. Johnson v. Berryhill*, No. 18-537, 2019 WL 722637 (D. Minn. Feb. 20, 2019) (finding that the ALJ properly took plaintiff's mental health into account, even if each impairment was not expressly addressed in the ALJ's decision).

Plaintiff's argument that the ALJ generally found Dr. Trulsen's opinions persuasive misses the mark.  Just because an ALJ's finding that an opinion is persuasive does not require the ALJ to adopt the opinion in its entirety.[2]  Moreover, "an ALJ is not required to

---

[2] *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (unpublished) ("Even whe[n] an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.").

discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

In sum, considering the full record, there is substantial evidence supporting the ALJ's social functioning limitation analysis to show that such evidence was considered in his determination of Plaintiff's RFC as a whole. Therefore, the Court concurs with the Magistrate Judge's recommendation to affirm the ALJ's decision.

## CONCLUSION

Although it is possible that the record may support a decision in favor of the Plaintiff, substantial evidence in the record as a whole supports the ALJ's evaluation of the medical opinions and other record evidence. As such, the ALJ's determination of Plaintiff's RFC and the ultimate decision to deny an award of benefits is supported by substantial evidence.

The Court will therefore overrule Plaintiff's objections, adopt the R&R, deny Plaintiff's motion for summary judgment, and grant the Commissioner's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objection to the Report and Recommendation [Docket No. 26] is **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Docket No. 24] is **ADOPTED**;

3. Plaintiff's Motion for Summary Judgment [Docket No. 15] is **DENIED**; and

4. Defendant's Motion for Summary Judgment [Docket No. 19] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 14, 2023
at Minneapolis, Minnesota.

                                                 JOHN R. TUNHEIM
                                           United States District Judge